Good morning, Your Honors. My name is Howard Davis. I represent the petitioner Slava Karapetyan. I'd like to reserve about two minutes for rebuttal. All right. The only issue for the administrative agency after the judge's decision was the judge's adverse credibility decision. She did not get to make an alternative finding on the merits of credibility. And before I get to that, I just wanted to address briefly the issue raised by the government on exhaustion of administrative remedies, and referring specifically to the case Zara v. Ashcroft, which did deal with a case like this, which was an affirmance without opinion. One of the distinguishing factors is that in Zara, the judge made both an adverse credibility decision and an alternative finding on the merits. In that case, the applicant in the BIA appeal just focused on certain aspects of the merits, but didn't mention nothing about the adverse credibility. And in that case, the Court found that there was no exhaustion of administrative remedies in going into the concerns to give the agency an opportunity to resolve controversies and correct errors. In this particular case, the only issue before the Board of Immigration Appeals was the adverse credibility decision. Now, so that is the only thing that it could have been on notice of looking at. And admittedly, the previous counsel's brief was not well put together, but it did challenge the Court's decision and, in fact, did, although inartfully, refer to asserted error regarding how the judge approached some of the documents and having ignored some of the other documents and then just generally challenged the judge's decision. So I think that given that the only issue before the Board was the adverse credibility, I think that that meets the minimum. Well, what do you, when you say the only issue, expand on that? Because the brief specifically tells the BIA that the immigration judge did not question the credibility of the testimony. Well, although, but then in another part, and in the... I'm reading from AR 6. Yes. No, I, I, yes, I definitely see that, did not question. However, in the earlier part, if you're looking at page 4, in talking about what went on, it said, starting in line 22, the Court also erroneously rejected Respondent's submission of his mother's birth certificate. The Court erroneously held it finds completely and wholly incredible. Respondent's mother was born in Armenia but couldn't have received an Armenian passport. The Court erroneously, and so forth. So even though that, that was in a kind of a recital section, it did, again, inelegantly refer to the error that the Court did. So... Do you think that the brief was making a distinction between the testimony and the documents? That the testimony... I think that, well, and that is, actually, that is one of the, and that is one of the interesting aspects of this case, is that the judge nowhere makes, finds that there is any discrepancies between the testimony and, for example, the, the asylum application and the attachment to that. The whole, everything that the judge focused on had to do with some of the documents. And it's also interesting the judge allowed in some of the documents which tend to support Mr. Karapetyan. For example, it allowed in the, the complaint to the authorities about what happened to his mother and which, in which he mentioned his mother's azure background and that her being in the hospital in a bad condition on January 5th, 1998. She let in the membership card of the, of that organization, which, again, tended to corroborate things that he said. For example, you know, that he was in a demonstration in August of 1998 and then a few months later was arrested in connection to that. So there were definitely aspects. That's one of the interesting things. And maybe that's, again, however, inartfully pointed out in the brief is that. Counsel. Counsel. Judge Gould with a question. Yes, I understand. Your argument is that despite the earlier brief to the BIA explicitly and mistakenly saying that the idea didn't question credibility, that we should hold that the adverse credibility issue was implicitly exhausted because of the other issues raised in the brief. But if we do that, what's bothering me is I'm having trouble seeing any logical stopping point. It almost seems like it would be equivalent to saying that any time someone files a brief raising some other issues, that they're implicitly challenging the adverse credibility determination. And that seems counterintuitive in light of our precedent. But I think that in taking a look at the exhaustion issue, Your Honor, is that we're taking a look at the totality of the record. And I think that one of the issues is, does the Board have notice about what is going about what it is that's being challenged here? And you have to — and one has to take a look at the record. And so I think one of the interesting things in Zara is, is that there were two things that could have been challenged and that the Board could have been put on notice on. And in that particular case, the applicant chose only one. But in this particular case, when one considers the totality of the record, there was only one issue at all. So even if the Board kind of ignores the brief and looks at the judge's decision, well, the only thing that the judge talked about was the adverse credibility. So I think if one's wondering about, well, the slippery slope, I think the end point is defined by the totality of the record. In some case where, yes, I mean, there were things that were brought up in here that really had nothing to do with the record. But if you're — but the end point is the record as a whole. In another type of situation, if, let's say, the judge in this case had done like the judge in Zara, then I think that there would have been a problem. But in this case, the record cuts the slope from getting too slippery. All right. Let's hear from the — you wanted to save your — well, you can use your time as you see fit. Right. I just wanted to say something about some of the credibility issues and — Sure. Go ahead. Okay. And I'll try to get that within a certain amount of time. I think that there are a lot of factors here that cannot be considered in the — and therefore doesn't support substantial evidence, does not support the judge's adverse credibility. Part of it was a failure to confront Mr. Carapetian. And I see I'm getting my time here. Improper conjecture about the documents. There was no actual finding about — there was no evidence of fraud in any of the documents. In fact, when the judge gave an opportunity for the government to send these off for investigation at the administrative record of page 204, they declined. So the — and the — and Mr. Carapetian explained how it is that he got some of these documents there. There are certain other things like the medical certificate and the discrepancy of dates. The judge didn't confront him on that. There are certain other things that were basically very much about conjecture, how it is that — the whole thing about the disbelief about Mr. Carapetian's We have your argument on the briefs. Okay, yeah. At least in these briefs, the argument was made. Yes, I did. Okay. Thank you. Counsel? Good morning, Your Honors. I'm Erica Miles for Attorney General Holder. The Court should dismiss this petition for review because it's very evident that — that counsel before the Board failed to properly exhaust the very issues now before this Court. Counsel's contention here that the fact that the only dispositive finding in this case was credibility cannot be sufficient here to say that the Board was on notice. As Judge Gould pointed out, it begs the question of where do you draw the line on how to properly exhaust a claim? And here, counsel for the first time is raising very specific issues, going through each and every aspect of the I.J.'s decision. And he's also raising issues that have nothing to do with the I.J.'s application of law to facts. He's trying to raise issues for the first time or raise arguments that are not evidence for the first time that there were problems with his client's own English translations that he submitted. That burden is on — is on the alien applicant to submit accurate English translations of foreign language documents. And the I.J. can certainly rely on the English translations that he submitted. So that, for example, is an argument that is very specific that he's trying to challenge. It was not raised before the Board, and the Board certainly couldn't anticipate that that was a challenge that was going to be made when it was never raised to the I.J. below even that there was something wrong with the translations the I.J. was relying upon. But putting that aside and looking at this very inadequate brief that was submitted to the BIA, I read it as saying that the I.J. hadn't found anything wrong about the testimony, but it was all in the documents, which was a basis for finding him incredible. Now, is that an improper reading of that brief? I wouldn't — I would say that it is an improper reading in that the brief itself in the argument section that you're referring to is quite evident that the attorney there was arguing facts and issues that did not at all pertain to this case. So I would submit that you can't even rely on the fact that the attorney there was even making a truly cohesive argument in that regard. They're talking about the asylum one-year bar for filing an application. That was not at issue. Talking about the I.J., criticizing that the applicant didn't — was unresponsive to questions, that was not an issue raised by the I.J. in this case. And also, in fact, talking about a very fundamental fact. There were a lot of things wrong with what goes in that brief. Yes. But I'm trying to highlight what might have been right. It was not right because the I.J. did flag testimonial inconsistencies. That was the linchpin of this case here. Where in the record is that? It's a testimonial inconsistency with the documentary evidence. And that's pertaining to the death certificates. Can you go to the transcripts and tell me where the I.J. challenged the testimony? Yes, it's in — give me one moment. On page 129, I believe, in the administrative record. Starting on page 129. We had set up — oh, I'm sorry, excuse me. That's setting up for about the doctor's testimony, that they would not include the hemorrhages or the blows. On page — The immigration judge specifically asked about when Carapetian submitted a second death certificate. He asked him specifically, well, why did you — what is the date of your mother's death? And why did you testify about the date of your mother's death? And also asked about the date of issue of the certificate. And it's about 157. Maybe it would be a little more direct if you went to AR-42, where the court says, in the instant case, the court does not find that the respondent has testified in a credible and forthright manner. The court does not believe the respondent provided credible testimony with regard to the alleged death of his mother. The court does believe that all of this testimony was fabricated by the respondent. And that's in the I.J. decision. I thought you were talking about the transcript of the hearing of the testimony itself. Yes. The I.J. explicitly found his testimony to be problematic. And his support for that decision was the fact that he testified inconsistently with documents he submitted as well.  But here's the reaction I had. Having read the I.J.'s opinion before I read anything else, I got to the statement in the brief that the I.J. didn't challenge the credibility of his testimony and said, if the B.I. looks at all at the I.J. decision, which one assumes they do, the B.I. had to know, had to know that the brief was absolutely 100 percent dead wrong because of what I just read. So to say that the – and what I take counsel to be arguing here is that if you're reading the I.J. opinion and then you look at the things that were challenged in the brief, the documentation and the like, the opportunity to explain and so on, that it's not as if the B.I.A. was hit from left field, that they – that there was a credibility factor here. And if they could look then to what the I.J. said about the different documents that were challenged, it makes it troublesome. The fact is there's no getting around that the brief says, however one parses it, that there was no – you know, just the I.J. didn't question the credibility of the direct testimony. Well, she clearly did. So then the question is, should we on the summary denial of the B.I.A., as it has here, we have no idea from the B.I.'s opinion what it looked at, but I assume they read the brief. Why shouldn't we assume that they had noticed just from reading the I.J.'s opinion that credibility, adverse credibility had been found and therefore implicit in all of their review should be the assumption that these errors that were being argued in the brief went to undermining that adverse credibility decision? You should not assume – I'll take it from this perspective. Again, it's a where you draw the line argument. Yes, obviously the B.I.A. could discern from the immigration judge's decision alone that the only dispositive finding in the case was a credibility finding and that the I.J. made determinations based on testimonial problems as well as document problems, discrepancies, and a failure to then rehabilitate and meet his burden of proof through corroboration. However, apart from that, we have, again, very specific challenges now raised for the first time before this Court. And while the Board is charged with looking at the immigration judge's decision to determine whether or not, in its opinion, the immigration judge's decision is supported by substantial evidence, you cannot charge the Board with anticipating every issue. How about as to the ones, though, that were embedded in the brief? Not necessarily because you don't know what counsel does agree with or disagree with. They're just – the ones embedded in the brief were very light. Again, the death certificate challenges here, the very main issue in this case that started it all off. And if you look at the brief before the Board, all that was stated was that he met his burden by authenticating it with an apostille stamp. And that's all he says about the death certificate. I mean, the IG made some very lengthy, explicit findings about problems with the date of birth and testimony, problems between the two death certificates, problems with his own testimony that the death certificates would never list a beating or a blow as a cause of death, and that these two certificates he submitted included that. He doesn't – that was not addressed at all to the Board. So it was not flagged for the Board to question the immigration judge's very specific determinations. And right there, I mean, he knew that the first certificate he submitted was false and incorrect. So he went back and got a second certificate. And even then, that second one still had problems with it. And that's the point in this case. He didn't explain that. And how could the Board anticipate each and every – and then, again, he's trying to raise – well, it was probably a transcription problem. We've got the point. And you're over time. Understood. I see I'm out of time. But the government would submit this really is a failure to exhaust issue. However, if you do decide to reach the merits of this case, we strongly contend that substantial evidence in the record supports this. We know that from your brief. Understood. Thank you very much. Thank you. Just briefly, one, first of all, the Petitioner – the Petitioner – again, there's nothing in the record that indicates any falsehood or knowledge of falsehood. He relied on people abroad, as in the case of Igemoni Berhe, to get the documents. Secondly, I may have mentioned things about the translation. I clearly did not hinge my arguments on the little – some little problems with the translation. And also, the Board, I believe, is aware of case law, particularly of whichever circuit. And so it has to be aware of – they've done zillions of cases involving average credibility. They have to be aware of the case law. And finally, you know, just because – Counsel? Yeah. I have a question for you, and maybe Judge Fisher can give you some extra time. I'm using up all your time. But – and I apologize. I can't recall the name of this case that I'm thinking of, but I wrote an opinion on a state law exhaustion issue that took the position that an issue was fairly exhausted to the – fairly presented to the Oregon Supreme Court, even though the petition for review wasn't explicit, because it was obvious from reading the, you know, the lower court's intermediate appellate court opinion that it was a federal issue. And the Supreme Court reversed my opinion, and basically said that an issue that was fairly presented had to be explicit, had to be presented in the brief that was filed to the state court. You couldn't assume that they read the underlying decision. So that's a long preamble. But, you know, an administrative agency may be different. What I want to know is, is there any precedent or law that makes clear that the BIA has to read the IJ – I mean, I have to say I cannot think of a case offhand. I could research if the Court would like that. But I also think that, you know, the administrative agency, I think a lot of – one of the reasons why a lot of deference is given to an administrative agency is that – is that it has a certain expertise, and it's there to make any corrections to whatever is happening below. I think that that has to be – that it has to underlie a lot of the deference that the courts give to the administrative agency. I think that there has to be that assumption there, that it has to look directly at things. And it has – and, I mean, this may not be a direct answer to your question because I don't have a precedent case off the top of my head to respond to it. But it – like I said, it has to be the basis of the deference that is given to administrative agencies or else none of this makes sense. Okay. Okay. Thank you. Thank you very much. Counsel, we appreciate the arguments. And the case is submitted. Thank you. Next case on calendar is Lima v. Kramer.
judges: Fletcher B. , Fisher, Gould